IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DOUGLAS MARTINEZ,

       Plaintiff,

    vs.                                        No.    18-2766-JTF-dkv

TENNESSEE BOARD OF REGENTS, and
TRACY HALL, JACQUELINE FAULKNER,
LEZLY WEBB, PHOENIX WORTHY,
and TONY PARKER, in their individual
and official capacities,

       Defendants.

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

On November 2, 2018, Douglas Martinez ("Martinez") filed a *pro se* "Complaint for Violations of Civil Rights under 42 U.S.C. § 1983" on the court-supplied form against the Tennessee Board of Regents (the "Board"), and the President of Southwest Tennessee Community College (Southwest) Tracy Hall ("Hall"), Vice President of Southwest Jacqueline Faulkner ("Faulkner"), Director of Campus Police at Southwest Lezly Webb ("Webb"), Administrator of Student Affairs at Southwest Phoenix Worthy ("Worthy"), and Commissioner of Tennessee Department of Corrections Tony Parker ("Parker"), individually and in their official capacities, (collectively "the Defendants.") (Compl., ECF No. 1.) On January 22, 2019, this

court recommended *sua sponte* dismissal of Martinez's complaint. (Report and Recommendation, ECF No. 8.) On April 1, 2019, Martinez filed "Objections to the Report and Recommendation, or, in the Alternative Leave to File an Amended Complaint." (ECF No. 12.) The presiding district judge adopted the recommendation in part, granted Martinez's request to amend his complaint within seven days of the order, and ordered service of process once the amended complaint was filed. (Order, ECF No. 13.) On September 9, 2019, Martinez filed an amended complaint against the Defendants alleging violations of the Due Process and Equal Protection clauses of the Fourteenth Amendment, the Adam Walsh Child Protection and Safety Act of 2006, 34 U.S.C. § 20911 et *seq.*, (the "Adam Walsh Act"), and two federal criminal statutes, 18 U.S.C. §§ 241 and 245. Although not clearly articulated, Martinez appears to assert two state law claims: violation of the Tennessee Sex Offender Registration and Monitoring Act, Tenn. Code Ann. § 40-39-211(d) and false imprisonment.

Before the court is the Defendants' November 8, 2019 motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Mot. to Dismiss, ECF No. 36.) Despite being granted additional time to do so, (ECF No. 39), Martinez did not file a response. This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

(Admin. Order 2013-05, Apr. 29, 2013.)  For the following reasons,
it is recommended that the Defendants' motion to dismiss be
granted.

## I.    PROPOSED FINDINGS OF FACT[1]

This action arises out of a series of incidents surrounding
Martinez's enrollment at Southwest Tennessee Community College
("Southwest"), located in Memphis, Tennessee.  (Am. Compl., ECF
No. 35.)  In general, Martinez alleges that the Board and the
individually named defendants removed him from his classes and
banned him from school property in such a way that his right to
attend college was violated, he was slandered and harassed, and he
was denied his right to due process.  (*Id.*)

Martinez states that he was a full-time student at Southwest
from January 16, 2018 to August 24, 2018.  (*Id.* at ¶ 7.)  According
to Martinez, in 2017, he received permission from the secretary
(someone named Rose) to defendant Faulkner, the vice president at
Southwest as well as permission from his parole officer ("Officer
Moore") and his parole officer's supervisor to attend classes at
Southwest even though Martinez is a registered sex offender.  (*Id.*
at ¶ 8.)  Martinez further contends that these individuals told

---

[1] In his amended complaint, Martinez listed his factual
allegations both in paragraph form and in narrative form.
Accordingly, some citations are to those facts listed in paragraph
form, while other citations are to specific pages found in
Martinez's amended complaint.

him to never mention his status as a sex offender unless asked by campus police or a faculty member. (*Id.* at ¶ 9.) Martinez was allegedly told that campus security would be notified whenever he applied for admission and his status as a sex offender would be noted in his file. (*Id.*)

On or around May 31, 2018, Martinez states that he reported his bag stolen to campus security who then ran a background check on him which revealed his criminal record. (*Id.* at ¶ 10.) Later, on June 7, 2018, Martinez alleges that he was removed from his class and escorted to the office of defendant Worthy, the Administrator of Student Affairs at Southwest. (*Id.* at ¶ 11.) Worthy then informed Martinez that his bag was found, but that Martinez needed to report to defendant Webb, the director of campus security at Southwest. (*Id.*) Upon arriving at Webb's office, Martinez contends that Webb told him he was being put on probation for not reporting his status as a sex offender. (*Id.* at ¶ 12.) Martinez states that he explained to Webb that "Rose" and his parole officer had given him permission to attend, told him not to report his status as a sex offender, and that all this would be noted in his campus records; it was not noted, however. (*Id.* at 10.) Martinez alleges Webb informed him he was not being expelled at that time because he was not "the only sex offender attending Southwest." (*Id.*) Martinez states that he was permanently removed from his on-campus class and placed in one online class. (*Id.*)

4

Furthermore, Martinez was banned from campus unless given permission by Worthy or campus police. (*Id.*)

Martinez states that on July 23, 2018 he participated in a conference call with the assistant director of West Tennessee for the Tennessee Department of Corrections (the "TDOC"), an "Officer Stewart," Worthy, and Webb. (*Id.* at ¶ 13.) During this telephone conference, Martinez alleges that the parties discussed the conditions of Martinez's parole and whether or not Martinez could continue his enrollment at Southwest. (*Id.*) Martinez contends that Worthy and Webb were "extremely argumentative and uncooperative and refused to listen" to Officer Stewart and the assistant director from the TDOC. (*Id.* at ¶ 14.) According to Martinez he was not violating his parole and the TDOC "supported him one hundred percent." (*Id.*) Additionally, Martinez alleges that Worthy and Webb ignored that a provision of the Tennessee Sexual Offender Registration and Monitoring Act, Tenn. Code Ann. § 40-39-211(d)(2), states that the conditions of his parole did not apply if he was enrolled at the school. (*Id.*)

Martinez contends that on or around July 28, 2018,[2] he was called into Worthy's office again where Worthy told Martinez he was being expelled because there was a daycare center at Southwest's Union Avenue campus where Martinez attended one class

---

[2] Later in his complaint, Martinez alleges that this meeting occurred on August 24, 2018. (Am. Compl. 7, ECF No. 35.)

and Martinez's presence there violated the Tennessee Sexual
Offender Registration and Monitoring Act.  Martinez alleges that
Worthy gave him a letter to review stating the conditions of his
expulsion, but he was denied a copy of this letter.  (*Id.* at ¶
15.)  After reading the letter, Martinez states that Worthy asked
him whether he would like to appeal the expulsion and Martinez
indicated that he would.  (*Id.* at ¶ 16.)  According to Martinez,
Worthy said that he would begin the process immediately.  (*Id.*)

On August 4, 2018,[3] Martinez's classes ended and Martinez
states that a letter of expulsion was emailed to him.  (*Id.* at ¶
17.)  Martinez alleges that the letter he received via email was
entirely different than the one Worthy handed him.  (*Id.*)
According to Martinez, the letter stated that it was the TDOC that
required his expulsion.  (*Id.* at 7.)  Additionally, Martinez
contends he was forced to give back the laptop that Southwest
loaned him.  (*Id.* at ¶ 17.) Martinez later alleges in his complaint
that he called Officer Moore, who told Martinez he would have to
"go over [Officer Moore's] head."  (*Id.* at 8.)  Martinez alleges
that he called Jeremy Buckelew, the director of the TDOC for
Western Tennessee, and found out that the TDOC was not responsible
for him being expelled and that instead, it was Southwest who

---

[3] Martinez later states that he received this letter around
August 27.  (Am. Compl. at 7-8, ECF No. 35.)

called the Board "complaining that they had a sex offender on their campus that would not leave and was harassing the staff." (*Id.*)

According to Martinez, he sent Worthy four emails regarding his appeal, which he states were ignored. (*Id.* at ¶ 22.) Additionally, Martinez alleges that he contacted the Board on September 23, 2018 and October 15, 2018 via phone and email but never received a response. (*Id.* at ¶ 23.) Martinez alleges that Officer Moore then told him to stop contacting Southwest because Southwest had filed a complaint. (*Id.* at ¶ 24.) Martinez argues that the TDOC only supported Southwest's decision to expel him because the TDOC could not force Southwest to allow him to attend. (*Id.* at ¶ 27.)

Martinez's complaint also contains information as to an incident regarding the computer Southwest loaned to him. Martinez alleges that he was called to Webb's office to explain an email that Martinez sent about the laptop being stolen. (*Id.* at ¶ 18.) According to Martinez, Webb and other members of Webb's staff, "repeatedly harassed" Martinez and Martinez's roommate by continuously calling his roommate at work and sending officers to his job. (*Id.* at 8.) Martinez contends that he told Webb that he could not retrieve the laptop because the manager of the apartment complex "illegally kicked him and his roommate out and was refusing to allow [Martinez] to access his property." (*Id.*) Martinez even alleges that Webb told Martinez to "break into the apartment and

steal the laptop." (*Id.* at 9.)

According to Martinez, Webb's lieutenant began to verbally attack him, called him a thief, and "shouted" that he was sex offender loud enough for others to hear. (*Id.* at ¶ 18.) Martinez states that this made him embarrassed and put his safety at risk. (*Id.*) Martinez alleges that after approximately thirty to forty-five minutes, Webb eventually showed up and also "verbally attacked" Martinez by shouting threats and calling him a "pedophile, a monster, a thief, and a liar." (*Id.* at ¶ 19.) Webb also allegedly "shouted" that Martinez was a sex offender loud enough for others to hear. (*Id.*)

Martinez alleges that his expulsion letters were full of "dishonest remarks" claiming that the TDOC had notified Martinez that he was in violation of his parole by being enrolled. (*Id.* at ¶ 26.) Further, Martinez alleges that defendant Faulkner, the vice-president of Southwest, knowingly lied about not knowing Martinez's status as a registered sex offender. (*Id.* at ¶ 28.) Additionally, Martinez contends that all the Defendants "knowingly and maliciously" conspired against him because of his status as a registered sex offender and violated, or allowed others to violate, his "right to pursue a higher education [and] his right to be free from harassment and judgment, violated the Adam Walsh Act. . . by using his sex offender status to discriminate against him and harass him, misapplied state and federal laws, denied his

[Fourteenth] Amendment right to Due Process, humiliated, verbally threatened and assaulted [him], and slandered and harmed [his] reputation." (*Id.* at ¶ 29.) Lastly, Martinez states that the Defendants failed "to properly train and supervise their employees and/or knowingly conspired with their subordinates to deny [him] Due Process and [the] right to life, liberty, and the pursuit of happiness." (*Id.* at ¶ 30.)

For relief, Martinez seeks a refund of all expenses paid to Southwest (books, supplies, tuition, and transportation); $250,000 per defendant for compensatory and punitive damages as a result of the "embarrassment, stress, slander, intimidation, threats, and damage to reputation;" $250,000 for false imprisonment by Webb; a public, written apology from Southwest; reimbursement of fees and expenses accrued as a result of litigation; that his records be "erased as if he never attended college there;" and criminal charges to be brought against the Defendants pursuant to 18 U.S.C. §§ 241 and 245. (*Id.* at 20.)

## II.    PROPOSED CONCLUSIONS OF LAW

### A.    Legal Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue which a court must determine before reaching other issues. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895

F.2d 266, 269 (6th Cir. 1990).  "Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "A party seeking to invoke the jurisdiction of the federal courts . . . bears the burden of establishing that such jurisdiction exists." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008)(per curiam).  When a party challenges a court's subject matter jurisdiction under Rule 12(b)(1) and raises the defense of the Eleventh Amendment, it is considered a factual attack on the court's jurisdiction and thus no presumption of truth applies to the plaintiff's allegations. *See Oshop v. Tenn. Dep't of Children's Serv.*, No. 3:09-CV-0063, 2009 WL 1651479, at *2-3 (M.D. Tenn. June 10, 2009); *Chapman v. Troutt*, No. 3:10-CV-01009, 2011 WL 2160941, at *2 (M.D. Tenn. June 1, 2011).

To survive a Rule 12(b)(6) dismissal following the United States Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).  The court "construes the complaint in a light most favorable to [the] plaintiff" and

"accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption to truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3. ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to 'less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." (internal quotation marks omitted)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte*

dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.   Dismissal for Lack of Subject Matter Jurisdiction as to Claims Against the Board and the Individual Defendants in Their Official Capacities

     The Defendants contend that all claims against the Board and against the individual defendants in their official capacities must be dismissed for lack of subject matter jurisdiction because each defendant is entitled to immunity under the Eleventh Amendment.  (Mot. to Dismiss, ECF No. 37.)  Although somewhat unclear, Martinez essentially asserts a § 1983 claim:  that, acting under color of law, the Defendants caused a deprivation of

federally protected rights.[4]  (Am. Compl. 13-20, ECF No. 35.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead that he suffered (1) a deprivation of rights secured by the Constitution or federal statutes that is (2) committed by a person acting under color of state law.  *Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  However, if the Eleventh Amendment bars suit, the court lacks subject matter jurisdiction and "shall dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see Henderson v. Southwest Tenn. Cmty. Coll.*, 282 F. Supp. 2d 804 (W.D. Tenn. 2008)(dismissing the claim pursuant to Rule 12(b)(1) as barred by the Eleventh Amendment).

1.  *Martinez's § 1983 Claims for Monetary Damages Against the Board and the Individual Defendants in Their Official Capacities*

Martinez has named the Board and each individual in his or her individual and official capacities as defendants in his suit. (Am. Compl., ECF No. 35.)  Among other things, Martinez seeks monetary damages including a refund of his expenses, compensatory and punitive damages, and damages for false imprisonment.  (*Id.* at

---

[4] Martinez asserts that the Defendants violated his rights under both the Due Process clause and the Equal Protection clause. (Am. Compl., ECF No. 35.)  Additionally, Martinez attempts to assert a claim under the Adam Walsh Act and two federal criminal statutes, 18 U.S.C. §§ 241 and 245.  (*Id.*)  Because this portion of the report and recommendation is dedicated to lack of subject matter jurisdiction pursuant to 12(b)(1), whether the Adam Walsh Act or 18 U.S.C. §§ 241 and 245 create a "federally protected right" which may be asserted pursuant to a § 1983 claim is addressed in Part II.C.3. and Part II.C.4.

20.)  The Defendants have raised the Eleventh Amendment as a bar to Martinez's claim and as a basis for this court's lack of subject matter jurisdiction.

Hall, Faulkner, Webb, and Worthy are all employees of Southwest.  Parker is an employee of the TDOC.  Southwest is a state-run higher-education facility.  It is funded and run through the State University and Community College System of Tennessee under governance of the Board, with a mission "to provide the citizens of Shelby and Fayette counties and the surrounding Mid-South region with a high quality and affordable post-secondary education."[5]

Official and individual capacity liability under § 1983 should be carefully distinguished.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)(citations omitted)(quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  Individual capacity suits, in contrast, seek to impose personal liability upon a government official for actions taken under color of state law, where the plaintiff recovers only against the government official's personal assets.  *Id.*  Claims against government

---

[5] *See Mission Statement*, Southwest Tennessee Community College, http://soutwest.tn.edu/mission_statement.htm (last visited Dec. 16, 2019).

14

officials in their official capacities are tantamount to a suit against the governmental entity. *Graham*, 473 U.S. at 166 (citation omitted). Accordingly, although Martinez did not name Southwest as a defendant, his claims against Hall, Faulkner, Webb, and Worthy in their official capacity are liberally construed as claims against Southwest and Martinez's official capacity claim against Parker is construed as a claim against the TDOC.

Because the Board, Southwest, and the TDOC are agencies of the State of Tennessee "[a] suit against [these entities] is actually a suit against the State of Tennessee." *Ward v. Shelby Cty.*, No. 05-cv-2205, 2006 WL 8435001, at *3 (W.D. Tenn. Mar. 7, 2006)(citing *Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). The Eleventh Amendment bars suits against state agencies and suits in which the state itself is named as a defendant because "a state is not a person within the meaning of 42 U.S.C. § 1983." *Id.* at *3 (citing *Will v. Michigan*, 491 U.S. 58, 71 (1989)); *see also Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

"[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)(internal citations omitted). Although Martinez has requested some forms of injunctive

relief, *see infra* Part II.B.2, Martinez has also requested monetary damages in the form of compensatory and punitive damages, fees and expenses. (Am. Compl. 20, ECF No. 35.) "Absent a clear abrogation of immunity by congressional action or an express state waiver of that immunity, the Eleventh Amendment prohibits suits for damages against a state in federal court." *Hixon v. Tennessee*, No. 14-cv-1087, 2015 WL 1486362, at *2 (W.D. Tenn. Mar. 31, 2015); *see also Graham*, 473 U.S. at 165-66; *Pennhurst*, 465 U.S. at 98-100; *Quern v. Jordan*, 440 U.S. 332, 343-45 (1979). Congress did not abrogate the Eleventh Amendment when it enacted § 1983, *Edelman*, 415 U.S. at 675-77, and Tennessee has not waived its sovereign immunity, Tenn. Code Ann. § 20-13-102(a). Accordingly, Martinez's claims for monetary damages against the Board and the individual defendants in their official capacity are barred by the Eleventh Amendment.

As such, this court lacks subject matter jurisdiction over those claims. It is therefore recommended that all claims against the Board and the individual defendants in their official capacity for damages be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

2.   *Martinez's § 1983 Claims for Injunctive Relief Against the Board and the Individual Defendants in Their Official Capacities*

Martinez also seeks other forms of relief from the Board and the individual defendants in their official capacities.

16

Specifically, Martinez seeks a public, written apology from Southwest faculty; for his records at Southwest to be erased "as if he never attended college there;" and for criminal charges to be brought against the defendants pursuant to 18 U.S.C. §§ 241 and 245. (Am. Compl. 20-21, ECF No. 20.) These requests for relief may be reasonably construed as seeking injunctive relief

As determined above, *see supra* Part II.B.1., the claims against the individual defendants in their official capacities and the claims against the Board amount to claims against the State of Tennessee. *See Ward v. Shelby Cty.*, No. 05-cv-2205, 2006 WL 8435001, at *3 (W.D. Tenn. Mar. 7, 2006)(citing *Pennhurst State Schl. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). As such, the Eleventh Amendment bars those claims. *Id.* A plaintiff, however, may overcome a state's sovereign immunity and seek prospective injunctive relief if the state has consented to suit, if Congress has properly abrogated the state's immunity, or if the exception outlined in *Ex parte Young*[6] applies. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000). As stated above, *supra* Part II.B.1., Tennessee has not waived its sovereign

---

[6] Under the *Ex parte Young* doctrine, a federal court can issue prospective injunctive relief against a state official in his or her official capacity to prevent future federal constitutional or federal statutory violations. 209 U.S. 123 (1908); *see also Frew v. Hawkins*, 540 U.S. 431, 437 (2004)(stating that the Eleventh Amendment permits suits against state officials for prospective injunctive relief in order to "ensure the enforcement of federal law").

immunity and Congress has not abrogated Tennessee's immunity in this type of action.

The *Ex parte Young* exception does not apply.  As to the Board, the *Ex parte Young* doctrine does not apply because this exception to the Eleventh Amendment only allows prospective injunctive relief against the state official in his or her official capacity. *See generally Ex parte Young*, 209 U.S. 123 (1908).  Accordingly, the Eleventh Amendment bars any claim against the Board, including Martinez's claims for injunctive relief because no exception applies.

As to the individual defendants in their official capacities, "in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court [must] conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)(quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *see also Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003)(noting that a complaint that is "based entirely upon past acts and not continuing conduct that, if stopped, would provide a remedy to [the plaintiff]" does not trigger the *Ex parte Young* exception).

Martinez's complaint is based entirely upon past acts which have already occurred.  He does not allege that he is still

18

currently attempting to enroll at Southwest, and he does not request re-enrollment as a student there.  Instead, Martinez seeks relief which is focused on the Defendants' past acts and not based on continuing conduct.  Southwest issuing a public apology, having his records erased, and having criminal charges brought against the Defendants would not now provide Martinez with a remedy to the alleged constitutional violations because the alleged violations are no longer occurring.  Accordingly, the *Ex parte Young* exception does not provide Martinez with a way of overcoming the State of Tennessee's immunity under the Eleventh Amendment.  It is therefore recommended that all of Martinez's § 1983 claims against the Board and the individual defendants in their official capacities for injunctive relief be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

3.    *Martinez's State Law Claims Against the Board and the Individual Defendants in Their Official Capacities*

Martinez also asserts state law claims for violation of Tenn. Code Ann. § 40-39-211(d) and false imprisonment against the Board and the individual defendants in their official capacities. (Am. Compl. 15-16, ECF No. 35.)  As discussed above, Martinez's claims against the Board and the individual defendants in their official capacities are properly construed as claims against the State of Tennessee.  The Defendants argue that the Eleventh Amendment therefore applies in equal force to Martinez's state law claims.

19

In *Pennhurst State School & Hospital v. Halderman*, the Supreme
Court made clear that even where a court may exercise supplemental
jurisdiction over a state law claim, the court must still "examine
each claim in a case to see if the court's jurisdiction over that
claim is barred by the Eleventh Amendment." *Pennhurst State Sch.
& Hosp.*, 465 U.S. at 121 (explaining and ultimately holding that
Eleventh Amendment immunity even applies to state law claims
brought by a private individual against the State). As such, for
the same reasons stated in Part II.B.1. and Part II.B.2, it is
recommended that the state law claims against the Board and the
individual defendants in their official capacities be dismissed
for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)
of the Federal Rules of Civil Procedure.

C.   <u>Dismissal for Failure to State a Claim as to the Federal
     Claims Against the Individual Defendants in Their Individual
     Capacities</u>

Martinez has also named Hall, Faulkner, Webb, Worthy, and
Parker as defendants in their individual capacities. (Am. Compl.,
ECF No. 35.) Martinez has alleged that these individuals denied
him due process and equal protection of the law, violated the Adam
Walsh Act and violated two federal criminal statutes, 18 U.S.C. §§
241 and 245. (*Id.*) The Defendants contend that all claims against
these individual defendants in their individual capacities must be
dismissed for failure to state a claim pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure.

20

As discussed previously, Martinez's claims for violations of allegedly protected federal rights are best construed as a § 1983 claim. Individual capacity suits, in contrast to official capacity suits, seek to impose personal liability on a government official for actions taken under color of state law, where the plaintiff recovers only against the government official's personal assets. *Monell*, 436 U.S. at 690. To state a claim under § 1983, a plaintiff must identify a right secured by the Constitution or federal statutes and a deprivation of that right by a person acting under the color of state law. *Adicks v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To be liable in an individual capacity, there must be a showing that the employee encouraged the specific incident of misconduct or in some way directly participated in it. "At a minimum, a § 1983 plaintiff must show that supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). For the reasons discussed below, Martinez fails to state a claim for any deprivation of constitutionally or federally secured rights by the individual defendants.

1.  *Due Process Claims*

Martinez generally alleges violations of his due process rights. The Fourteenth Amendment forbids a state from depriving

any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. The Due Process Clause contains a "substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)(quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The Due Process clause also encompasses another type of protection, a guarantee of fair procedure. Thus, a § 1983 action may be brought for a violation of either substantive or procedural due process. *Id.* at 125-26.

    a.    Substantive Due Process

It is unclear from Martinez's complaint whether he asserts solely a procedural due process claim or also asserts a substantive due process claim on the basis of his alleged interest in continued enrollment in Southwest. For purposes of this report and recommendation, this court will assume that Martinez is alleging a substantive due process violation. Martinez, however, fails to assert a liberty or property interest in continued enrollment at Southwest. In a letter Martinez attached to his objections to this courts Report and Recommendation, Southwest informed Martinez that he was not being expelled from his class – he was allowed to finish the semester by taking an online class – but that he was no longer allowed to enroll at Southwest afterwards. (Letter, ECF No. 12-5.) Accordingly, the issue is whether Martinez has an

interest protected by substantive due process in continued enrollment at Southwest.

The Sixth Circuit held in *McGee v. Schoolcraft Community College*, that absent an equal protection violation, there is "no basis for finding" continued enrollment is protected by the substantive due process clause. 167 F. App'x 429, 436-37(6th Cir. 2013). For the reasons stated below in Part II.C.2., Martinez fails to state a claim for violation of the Equal Protection clause. As such, there is "no basis for finding" that Martinez has a protected interest in continued enrollment for purposes of a substantive due process claim. Accordingly, it is therefore recommended that his claim be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The fact, however, that Martinez fails to assert a claim under a substantive due process theory is not necessarily fatal to a procedural due process claim. *Id.* at 437 (continuing to examine the plaintiff's procedural due process claim despite determining that continued enrollment was not a protected liberty interest for purposes of a substantive due process claim).

b.   Procedural Due Process

Martinez alleges that the individually named defendants deprived him of his liberty interest in continuing his college education without due process of law. The Defendants have asserted that Martinez fails to state a claim because he has no property or

23

liberty interest for which due process is required and that even if he has a property interest, he was afforded due process. (Mot. to Dismiss 5-7, ECF No. 37.)

"The requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). In procedural due process claims, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional." *Zinermon*, 494 U.S. at 125 (citation omitted). Rather, it is the deprivation of the interest without due process of law that is unconstitutional. *Id.* In other words, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.* at 126. To state a claim for violation of procedural due process, a plaintiff must allege that: (1) he had a property or liberty interest of which he was deprived; and (2) the state did not afford him adequate procedural rights prior to depriving him of the interest. *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)(citing *Women's Med. Prof.'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)); *Smith v. Jefferson Cty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216 (6th Cir. 2011)(citing *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000)).

The Defendants first argue that Martinez was not "expelled," but rather was "simply no longer allowed to enroll" at Southwest. (Mot. to Dismiss 6, ECF No. 37.)    The Defendants cite to an attachment to Martinez's objections to this court's Report and Recommendation.    (*Id.*)    Accordingly, the Defendants contend that Martinez has no underlying property or liberty interest which would afford Martinez the right to due process. (*Id.*) The term "liberty interest" extends beyond freedom from bodily restraint. *Roth*, 408 U.S. at 572.    Courts have repeatedly held that "the Due Process Clause is implicated by higher education disciplinary decisions" but recognized that '[t]he *amount* of process due will vary according to the facts of each case." *Flam v. Med. Coll. of Ohio*, 418 F.3d 629, 634 (6th Cir. 2013).    The issue, however, of whether a former student has an interest in continued enrollment has generally gone unanswered and is usually assumed without being decided.    *See, e.g.*, *McGee*, 167 F. App'x at 437 ("The issue of whether a student's interest in continued enrollment at a post-secondary institution is protected by procedural due process has not been resolved.    Courts have avoided this issue where possible by assuming for the sake of argument that such an interest exist.")(citations omitted).    Accordingly, for purposes of this report and recommendation, this court will assume that Martinez does have an interest in continued enrollment at Southwest which triggers procedural due process.

25

Once the court determines that due process applies, the question still remains what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Supreme Court has made clear that there are two basic due process requirements: (1) notice, and (2) an opportunity to be heard. *See Goss*, 419 U.S. 565, 579 (1975)(quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1917)("The fundamental requisite of due process is the opportunity to be heard.")); *Goldberg v. Kelly*, 397 U.S. 254 (1970). The type of notice and hearing required varies based on the facts surrounding the disputed actions. *See Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 12 (1st Cir. 1988)(stating that due process is "not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation").

Martinez's complaint and other documents in the record, however, make clear that Martinez was given both notice and an opportunity to be heard regarding his future at Southwest. In his complaint, Martinez states that he was initially pulled from class and it was explained to him that he was not being expelled at that time, but due to his failure to properly report that he was a registered sex offender, he was being placed on probation. (Am. Compl. ¶ 11-12, ECF No. 35.) Later, Martinez contends that he participated in a conference call with several individuals where the conditions of his parole and "whether he could stay a student

26

at Southwest" were discussed. (*Id.* at ¶ 3.) Additionally, Martinez states that he had a meeting with Worthy where he was given notice that he would be "expelled," that he would receive a letter, and that he was handed a copy of the letter to read. (*Id.* at ¶ 15.) He also contends that Worthy told him he could appeal the decision. (*Id.* at ¶ 16.) The letter Martinez attached to his objections and referenced in his amended complaint, explicitly states that he received notice during a meeting to discuss his future at Southwest. (Letter, ECF No. 12-5.) This letter also states that if Martinez wishes to appeal, he may do so in writing within five days via email to Worthy. (*Id.*) Martinez alleges he told Worthy he wished to appeal the decision; however, Martinez makes absolutely no factual allegations that he followed the procedure and emailed Worthy within five days of the letter stating that he wished to appeal.

Accordingly, Martinez fails to show that he was not provided notice or an opportunity to be heard. His factual allegations demonstrate that he had notice of potential action regarding his continued enrollment at Southwest, that he participated in at least two conversations in which he had the opportunity to speak on his own behalf, and that he had a further opportunity to appeal but failed to do so. Therefore, Martinez fails to establish that his procedural due process rights were violated by the Defendants and it is therefore recommended that his claim be dismissed pursuant

27

to 12(b)(6) of the Federal Rules of Civil Procedure.

2.   *Equal Protection Claim*

Martinez vaguely asserts that he has a "right to equal protection of the law." (Am. Compl. 17, ECF No. 35.) While his argument is somewhat unclear, from what the court can glean, Martinez asserts that he is being denied higher education on the basis of his status a sex offender. (*Id.* at 5, 13-14, 17-18.) In the Defendants' motion to dismiss, they argue that Martinez has no fundamental right to education, Martinez is not a member of a suspect class, and he makes no allegations that he was treated differently than other similarly situated individuals and therefore, his claim must be dismissed. (Mot. to Dismiss 5-6, ECF No. 37.)

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. "To state a claim under the Equal Protection clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996)(quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). "The basis of any equal protection claim is that the state has treated similarly-situated individuals differently." *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966

F.2d 1031, 2036 (6th Cir. 1992).

Despite Martinez's apparent contention that being a sex offender is a protected class, the Sixth Circuit has held that "[c]onvicted sex offenders are not a suspect class" as to the Equal Protection clause. *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999). Additionally, Martinez does not allege that he is a member of any other protected class or allege facts which suggest that the Defendants discriminated against him on the basis of his membership in such protected class. Therefore, Martinez fails to state a claim for violation of the Equal Protection clause, and it is thus recommended that his claim be dismissed.

3. *The Adam Walsh Act Claim*

Martinez contends that the Defendants violated the Adam Walsh Act, because the Defendants used "what is public knowledge to repeatedly harass, intimidate, threaten, and slander [Martinez] which resulted in irreparable harm to [his] reputation which is a protected liberty and [his] liberty to due process because he is a registered sex offender." (Am. Compl. 17, ECF No. 35.) In their motion to dismiss, the Defendants simply state that there is no private right of action under the Adam Walsh Act and therefore Martinez's claim should be dismissed. (Mot. to Dismiss 9, ECF No. 37.)

Title I of the Adam Walsh Act is commonly known as the Sex

Offender Registration and Notification Act ("SORNA").[7] The provision of SORNA cited to by Martinez states, "[the jurisdiction's Internet site] shall include a warning that information on the site should not be used to unlawfully injure, harass, or commit a crime against any individual named in the registry . . . . The warning shall note that any such action could result in civil or criminal penalties." 34 U.S.C. § 20920(f).

Despite Martinez's contentions, the language of the statute does not create a private right. Rather, it simply instructs jurisdictions to ensure that they include proper warnings on their websites. *See Cruz v. New York*, No. 5:17-CV-00510(BKS/TWD), 2017 WL 6021838, at *19 (N.D. New York, Oct. 27, 2017)(reviewing a different provision of SORNA and stating that SORNA provides for the registration of sex offenders and "appears to have no relevance" to the plaintiff's civil suit). Martinez is not alleging that the State of Tennessee fails to meet the requirements of SORNA. In fact, Tennessee's Sex Offender Registry contains the very disclaimer required by SORNA, stating "[p]ursuant to Tennessee Code Annotated Section 40-39-201, members of the public are not allowed to use information from the registry to inflict retribution or additional punishment to offenders. . . .[and] doing

---

[7] Nat. District Attorneys Association, *Update: Practitioner's Guide to the Adam Walsh Act*, 20 Nat. Ctr. for Prosecution of Child Abuse 2, 2 (2007), https://www.smart.gov/pdfs/practitioner_guide_awa.pdf.

so may violate both Tennessee criminal and civil laws."[8]
Accordingly, Martinez's remedy in this case would be found in
Tennessee's civil laws.    Martinez, however, brings his claim
pursuant to the Adam Walsh Act, which does not provide him with a
private right of action.    Accordingly, it is recommended that
Martinez's claim pursuant to the Adam Walsh Act be dismissed.

    4.    *18 U.S.C. §§ 241 & 245 Claim*

Martinez asserts violations of two federal criminal laws, 18
U.S.C. §§ 241 and 245.    In their motion to dismiss, the Defendants
argue that "a private citizen does not have any authority to assert
a criminal claim against individuals" and therefore Martinez's
claim must be dismissed for failure to state a claim.    (Mot. to
Dismiss 9, ECF No. 37.)

Sections 241 and 245 of Title 18 provide for penalties of
fines, imprisonment, or both when two or more persons: (1)
"conspire to injure, oppress, threaten, or intimidate any person
. . . in the free exercise or enjoyment of any rights or privileges
secured to him" or (2) act under color of law, "by force or threat
of force [to] willfully injure[], intimidate[] or interfere[]
with, or attempt[] to injure, intimidate or interfere with" any
person in the exercise of his or her federally protected

---

    [8]  Tenn. Bureau of Investigations, *Sex Offender Register
Search*,    TN.gov,    https://www.tn.gov/tbi/general-
information/redirect-tennessee-sex-offender-registry-search/sex-
offender-registry-search.html (last visited December 31, 2019).

activities.   18 U.S.C. §§ 241 & 245.

    "The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1974).   Sections 241 and 245 are criminal statutes with no private right of action.   *See, e.g.*, *Booth v. Henson*, 290 F. App'x 919, 920-21 (6th Cir. 2008)(holding that the plaintiff lacks standing to file an action under §§ 241 and 242); *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)(holding that the district court properly dismissed the defendant's claim filed pursuant to §§ 241 and 242 because he had no private right of action under those statutes); *Jones v. Grafton Corr. Inst. Staff*, No. 1:17-CV-2588, 2018 WL 1871090, at * 2 (N.D. Ohio Apr. 19, 2018)(applying holdings from *Booth* and *Oguaju* to § 245 as well); see also 18 U.S.C. § 245(a)(1)(explaining that actions pursuant to § 245 may only be by the United States with the authority of the Attorney General).

    A "private right of action" is a term of art describing when a law creates rights allowing private parties – such as Martinez – to bring a lawsuit.   Here, §§ 241 and 245 do not provide for such private right of action; thus, Martinez may not bring suit to impose civil liability under these statutes.   Because 18 U.S.C. §§ 241 and 245 are criminal statutes that do not provide any basis for civil liability, Martinez fails to state a claim upon which

relief may be granted. Therefore, it is recommended that Martinez's §§ 241 and 245 claims be dismissed.

D. Dismissal for Failure to State a Claim as to State Law Claims against Individual Defendants in Their Individual Capacities

Martinez alleges the Defendants violated the Tennessee Sexual Offender Registration and Monitoring Act, Tenn. Code Ann. § 40-39-211(d), a state law claim. (Am. Compl. 3, 11, 15-16, ECF No. 35.) By seeking damages for $250,000 against Webb and Southwest for false imprisonment, Martinez appears to assert a state law claim for false imprisonment. (Am. Comp. 20 at ¶ 3, ECF No. 35.)

As to his claim under Tenn. Code Ann. § 40-39-211, Martinez repeatedly states that the Defendants "came to the conclusion that Martinez was not allowed on campus due to the campus having a daycare on site" per Tenn. Code Ann. § 40-39-211(d)(1) but "completely ignor[ed]" Tenn. Code Ann. § 40-39-211(d)(2). (*Id.* at 11.) According to Martinez, although § 40-39-211(d)(1) states that a registered sex offender may not be within 1,000 feet of a public school or private or parochial school, § 40-39-211(d)(2) states that this rule does not apply if the registered sex offender is a student there. (*Id.* at 16.) Therefore, Martinez alleges that the Defendants violated the statute. Furthermore, Martinez contends that there is only a daycare on the Union campus, not the Macon campus, that he was only enrolled in one class at the Union Avenue campus, and that this issue was discussed prior to his

33

enrollment. (*Id.*) The Defendants argue that this statute governs registered sex offenders and does not provide a right of action to sue a non-sexual offender. (Mot. to Dismiss 9, ECF No. 37.)

Section 40-39-211 of the Tennessee Code Annotated governs the establishment of residence or acceptance of employment for registered sex offenders. Tenn. Code Ann. § 40-39-211. Subsection (d)(1) specifically mandates that no sex offender may knowingly "be upon or remain on the premises of any building. . . of any public school, private or parochial school, licensed day care centers, [and] other child care facilit[ies]. . . ." Tenn. Code Ann. § 40-39-211(d)(1). Additionally, subsection (d)(2) states that subsection (d)(1) will not apply when the sex offender is a "student in attendance at the school." Tenn. Code Ann. § 40-39-211(d)(2).

Section 40-39-211 of the Tennessee Code Annotated does not explicitly provide a private right of action. The United States Supreme Court in *Cort v. Ash* outlined several factors for courts to consider in determining whether a statute implicitly provides a private remedy. 422 U.S. 66 (1975). Those factors include the language of the statute, the legislative intent, and the underlying purpose of the legislative scheme. *Id.* at 78. The Sixth Circuit has adopted this same test in making this determination. *See, e.g.*, *Local 3-689, Oil, Chem. & Atomic Int'l Union v. Martin Marietta Energy Sys.*, 77 F.3d 131, 134 (6th Cir. 1996.)

Nothing in the language of § 40-39-211 creates a private right of action.  By its terms, § 40-39-211 simply seeks to govern where a registered sex offender may establish his or her residence or accept employment; it does not provide registered sex offenders with a cause of action when someone fails to acknowledge a specific provision of the statute.  Additionally, § 40-39-201 indicates that the purpose behind the statutory scheme was not to provide sex offenders with causes of action, but rather to protect the public because "[i]t is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses. . . to allow members of the public to adequately protect themselves. . . [and to] protect[] vulnerable populations from potential harm."  Tenn. Code Ann. § 40-39-201.  Beside challenging the constitutionality of § 40-39-211, which Martinez does not purport to do, there is no case in Tennessee or otherwise to suggest courts have interpreted § 40-39-211 to create a private right of action.  As nothing in the language, history, or purpose of § 40-39-211 allows this court to infer that there is a private right action, Martinez fails to state a claim for which relief can be granted.

As to Martinez's false imprisonment claim, Tennessee courts generally define the tort of false imprisonment as the plaintiff being restrained or detained against his or her will by the defendant and the restraint or detention was unlawful. *See, e.g.,*

*Newsom v. Thalhimer Bros., Inc.*, 901 S.W.2d 365, 367 (Tenn. Ct. App. 1995). Feeling mentally restrained is insufficient. *Id.* Martinez's complaint contains absolutely no factual allegations which would state a claim for false imprisonment. Martinez makes no allegations that Webb restrained or detained him other than his statement seeking relief for false imprisonment by Webb. Accordingly, Martinez fails to state a claim. As such, it is recommended that both Martinez's claim for violation of Tenn. Code Ann. § 49-30-211 and for false imprisonment be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9]

### III. RECOMMENDATION

Even taking Martinez's pleaded facts in a light most favorable to him, the court lacks subject matter jurisdiction over the claims asserted by Martinez against the Board and the individual defendants in their official capacities and Martinez fails to state a claim upon which relief can be granted as to his claims against the individual defendants in their individual capacities. Therefore, for the foregoing reasons, it is recommended that the Defendant's motion to dismiss all Martinez's claims against all Defendants be granted in its entirety.

Respectfully submitted this 8th day of January 2020.

---

[9] In addition, if the Martinez's federal claims are dismissed, the court can decline to exercise supplemental jurisdiction over Martinez's state law claims. There is no diversity jurisdiction alleged.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


NOTICE

Within fourteen (14) days after being served with a copy of this
report and recommended disposition, a party may serve and file
written objections to the proposed findings and recommendations.
A party may respond to another party's objections within fourteen
(14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).
Failure to file objections within fourteen (14) days may constitute
a waiver of objections, exceptions, and further appeal.